# EXHIBIT A

RETURN DATE: FEBRUARY 26, 2019

| | |
|---|---|
| MELISSA FRANK, ON BEHALF OF HERSELF AND ALL OTHERS SIMILARLY SITUATED, | SUPERIOR COURT |
| Plaintiff, | JUDICIAL DISTRICT OF STAMFORD/NORWALK |
| v. | AT STAMFORD |
| MARRIOTT INTERNATIONAL, INC., STARWOOD HOTELS & RESORTS WORLDWIDE LLC, ARNE SORENSON, AND DOES 1-10, | |
| Defendants. | FEBRUARY 4, 2019 |

## CLASS ACTION COMPLAINT

Plaintiff Melissa Frank, on behalf of herself and all others similarly situated, alleges the following against Defendants Marriott International, Inc. ("Marriott"), Starwood Hotels & Resorts Worldwide LLC ("Starwood"), Arne M. Sorenson ("Sorenson") as President and Chief Executive Officer of Marriott, and Does 1-10.

### SUMMARY OF THE CASE

1. This case stems from the data breach Marriott announced on November 30, 2018 (the "Data Breach"). Starwood and Marriott failed to adequately secure and safeguard the personally identifiable information and other sensitive information accessed in the Data Breach, including passport numbers and payment card information (collectively, "Personal Information") of an estimated 383 million travelers worldwide. Flaws in Starwood's reservation system allowed hackers to compromise that system and associated databases dating back to 2014.

IVEY, BARNUM & OMARA, LLC  •  ATTORNEYS AT LAW  •  JURIS NO. 28682
170 MASON STREET  •  GREENWICH, CONNECTICUT 06830-6692  •  (203) 661-6000

2. Defendants knew that they needed to protect Personal Information, but they failed to use reasonable measures to do so. Starwood and Marriott left Personal Information unencrypted, improperly handled and stored it, and failed to maintain it in accordance with applicable cyber-security policies and procedures.

3. Defendants failed to disclose to travelers who booked reservations through the Starwood reservation system or were members of Starwood's Preferred Guest ("SPG") loyalty program, or others whose Personal Information was stored in Starwood's reservation systems and databases, that their information was at risk of being stolen.

4. Defendants also failed to provide timely, accurate, and adequate notice to Plaintiff or to the approximately 383 million travelers who had their data compromised in the Data Breach.

5. Accordingly, on behalf of herself and those similarly situated, Plaintiff seeks damages and injunctive relief to ensure that Marriott adequately protects Personal Information going forward.

## JURISDICTION AND VENUE

6. Defendant Starwood maintains its principal headquarters at One StarPoint (formerly 333 Ludlow Street), Stamford, Connecticut 06902. In addition, Starwood is registered to conduct business in Connecticut, regularly conducts business in Connecticut, and has sufficient minimum contacts in Connecticut. Moreover, Defendants intentionally avail themselves of this jurisdiction by conducting

IVEY, BARNUM & O'MARA, LLC  •  ATTORNEYS AT LAW
170 MASON STREET  •  GREENWICH, CONNECTICUT 06830-6692  •  (203) 661-6000  •  JURIS NO. 28682

Starwood's corporate operations here and promoting, selling, and marketing Starwood's and Marriott's services to Connecticut residents.

7. Venue is proper because Marriott does business in this judicial district, including the business conducted at the headquarters of its subsidiary, Defendant Starwood. Defendants made decisions in this District regarding overall corporate governance and management, including the data security measures at issue in this lawsuit. Venue is also proper because a substantial number of the events or omissions giving rise to the claims in this action occurred in or emanated from this District, including the decisions made by Starwood's governance and management personnel that led to the Data Breach.

## PARTIES

8. Plaintiff Melissa Frank is a dual citizen of the United States and the United Kingdom, and currently resides in the United Kingdom. She has been a member of Starwood's loyalty programs since before 2014. Ms. Frank provided Personal Information to Defendants on the understanding that Defendants would keep it secure, employ reasonable and adequate security measures to ensure that hackers would not compromise it, and notify her promptly in the event of a breach.

9. Defendant Marriott International, Inc., is a Delaware corporation with its principal executive offices located at 10400 Fernwood Road, Bethesda, Maryland 20817.

10. Defendant Starwood Hotels & Resorts Worldwide LLC is an indirect, wholly owned subsidiary of Marriott. On September 23, 2016, Marriott acquired Starwood,

3

formerly known as Starwood Hotels & Resorts Worldwide, Inc.  Starwood's principal executive offices are, and were at all relevant times, located at One StarPoint (formerly, 333 Ludlow Street), Stamford, Connecticut 06902.  On information and belief, numerous Starwood internet technology employees continue to work at these Connecticut offices.

11. Defendant Arne M. Sorenson ("Sorenson") has served as Marriott's President and Chief Executive Officer since March 31, 2012.  At all relevant times, Defendant Sorenson was directly involved in the management of Marriott and exercised control over Starwood and Marriott.   Sorenson was directly or indirectly involved in the oversight of or implementation of Marriott's internal controls regarding the privacy of Starwood and Marriott guests.

12. The true names of Does 1 through 10 ("Doe Defendants"), whether individual, corporate, associate, or otherwise, are unknown to Plaintiff, who sues these Defendants under fictitious names.  Each of the Doe Defendants is responsible in some manner for the conduct alleged herein, including, without limitation, by way of aiding, abetting, furnishing the means for, and/or acting in capacities that create agency, *respondeat superior*, and/or predecessor or successor-in-interest relationships with the Defendants.  The Doe Defendants are individuals, associations, partnerships, corporations, or other entities that actively assisted and participated in the negligent and wrongful conduct alleged herein in ways that are currently unknown to Plaintiff.  Plaintiff reserves the right to amend this

IVEY, BARNUM & O'MARA, LLC  •  ATTORNEYS AT LAW
170 MASON STREET  •  GREENWICH, CONNECTICUT 06830-6692  •  (203) 661-6000  •  JURIS NO. 28662

4

Complaint to allege the true names, capacities, and actions of these Doe Defendants once they are ascertained, and to add additional facts and/or legal theories.

13. Plaintiff makes all allegations contained in this Complaint against all Defendants, including the Doe Defendants.

## FACTUAL BACKGROUND

### A.   Starwood and Marriott Collect Personal Information on Guests, SPG Members, and Those Who Make Reservations

14. Marriott is a global hospitality company that operates more than 6,700 properties in 130 countries and territories. In 2017, Marriott reported $22 billion in revenue.

15. In November 2015, Marriott announced that it was purchasing Starwood for $13.6 billion. Marriott's acquisition of Starwood was completed in September 2016, making Marriott the world's largest hotel chain. Before the acquisition, Starwood was a separate hospitality company that included the following hotel brands: W Hotels, St. Regis, Sheraton Hotels & Resorts, Westin Hotels & Resorts, Element Hotels, Aloft Hotels, The Luxury Collection, Tribute Portfolio, Le Meridien Hotels & Resorts, Four Points by Sheraton, and Design Hotels, as well as Starwood-branded timeshare properties.

16. Starwood's reservation system was purportedly separate from other Marriott-branded hotel reservation systems until at least December 2018.

17. At all times relevant to this action, Starwood and Marriott received and stored massive amounts of Personal Information and used this information to maximize profits through predictive marketing and other marketing techniques.

5

IVEY, BARNUM & O'MARA, LLC  •  ATTORNEYS AT LAW
170 MASON STREET  •  GREENWICH, CONNECTICUT 06830-6692  •  (203) 661-6000  •  JURIS NO. 28662

Starwood and Marriott promised to maintain this Personal Information pursuant to their privacy policies.

18. Plaintiff would not have been a Marriott or SPG member, stayed at a Starwood or Marriott property, or supplied her Personal Information for reservations had she known that Defendants would not adequately protect her Personal Information.  Alternatively, even if Plaintiff had known the concealed risk inherent in booking at Defendants' properties and chosen to book anyway, the room would have been worth less, in order to compensate her for that risk.

19. Starwood or Marriott failed to disclose their negligent and insufficient data security practices, including the unencrypted storage of payment card information and passport numbers.  Plaintiff and consumers relied on or were misled by these omissions in making reservations or supplying Personal Information to Starwood or Marriott through their SPG membership or otherwise.

20. By withholding important information from consumers about the inadequacy of Starwood's and Marriott's data security, Defendants created an asymmetry of information between themselves and consumers that precluded consumers from acting to avoid or mitigate injury.

**B.    Personal Information Has Significant Value and Must Be Protected**

21. Defendants knew or should have known at all relevant times that Personal Information is valuable and a frequent target of hackers and other malicious actors. The names, email addresses, recovery email accounts, telephone numbers, payment card information, passport information, and other valuable Personal Information

IVEY, BARNUM & O'MARA, LLC  •  ATTORNEYS AT LAW  •  JURIS NO. 28682
170 MASON STREET  •  GREENWICH, CONNECTICUT 06830-6692  •  (203) 661-6000

provided to Starwood and Marriott can be used to gain access to a variety of consumer accounts and websites.

22. The value of Personal Information on the black market has been widely reported by numerous media outlets. For example, the Federal Trade Commission sued Wyndham Worldwide Corporation in 2012 because the company failed to provide reasonable cybersecurity protections for customer data. In August 2018, the U.S. Department of Justice indicted members of an Eastern European cybercrime ring called Fin7, which targeted, among others, hotel chains. Despite this well-publicized litigation and the frequent public announcements of data breaches by retailers and hotel chains, Defendants chose to maintain an inadequate system to protect the Personal Information of Plaintiff and other class members.

23. Once stolen, Personal Information can be used in different ways. One of the most common uses is to offer the Personal Information for sale on the "dark web," an opaque part of the Internet that makes it difficult for authorities to detect the location or owners of a website. The dark web is not indexed by normal search engines such as Google and is only accessible using a Tor browser or similar tool that aims to conceal users' identities and online activity. The dark web is notorious for hosting marketplaces illegally selling weapons, drugs, and personally identifiable information. When Personal Information ends up on the dark web, there is almost no way to track down who has it.

24. Once someone buys Personal Information, the buyer can then use it to gain access to different areas of the victim's digital life, including bank accounts, social

IVEY, BARNUM & O'MARA, LLC • ATTORNEYS AT LAW • JURIS NO. 28682
170 MASON STREET • GREENWICH, CONNECTICUT 06830-6692 • (203) 661-6000

media accounts, and credit card accounts.  By breaking into the victim's accounts, a buyer can obtain even more sensitive data from those accounts, as well as from accounts of family, friends, and colleagues.

25. Identity thieves can also use stolen Personal Information to embarrass, blackmail, or harass, or to commit other types of fraud, including obtaining ID cards or driver's licenses, fraudulently obtaining tax refunds, and obtaining government benefits.  Moreover, as a 2008 Presidential Report on identity theft states:

> In addition to the losses that result when identity thieves fraudulently open accounts or misuse existing accounts, . . . individual victims often suffer indirect financial costs, including the costs incurred in both civil litigation initiated by creditors and in overcoming the many obstacles they face in obtaining or retaining credit. Victims of non-financial identity theft, for example, health-related or criminal record fraud, face other types of harm and frustration.

In addition to out-of-pocket expenses, victims of "new account identity theft" (*i.e.* the opening of new credit or other accounts using stolen personal information), for example, must correct fraudulent information in their credit reports and monitor their reports for future inaccuracies, close existing bank accounts and open new ones, and dispute charges with creditors.

26. One form of identity theft, branded "synthetic identity theft," occurs when thieves combine real and fake identifying information to create new identities, then use those identities to open new accounts.  Synthetic identity theft is more difficult to unravel than traditional identity theft because it is not tied to a single individual.

27. The problems associated with identity theft are exacerbated by the fact that many identity thieves wait years before attempting to use the Personal Information

they have obtained.  To protect themselves, victims need to remain vigilant against unauthorized data use for years or even decades to come.

**C.    Defendants' Inadequate Data Security Allowed the Breach of 383 Million Accounts**

28. On November 30, 2018, Marriott first announced the Data Breach and that Marriott believed it had exposed the Personal Information of 500 million users.

29. Marriott claims it discovered the vulnerability on September 8, 2018 "from an internal security tool regarding an attempt to access the Starwood guest reservation database," and it "engaged leading security experts to help determine what occurred."  (Starwood Guest Reservation Database Security Incident, Kroll *available at* https://answers.kroll.com/).

30. Marriott admitted that nefarious actors had had access to the Starwood guest reservation database since 2014.

31. Marriott reported that the unauthorized users had copied and encrypted information, as well as attempted to remove it.

32. Marriott later determined that the contents were from its Starwood guest reservation database.

33.  The Starwood guest reservation database contains guests' and potential guests' Personal Information, including names, addresses, phone numbers, email addresses, passport numbers, SPG account information, dates of birth, genders, arrival and departure information, reservation dates, and communication preferences.

9

34. For other guests and potential guests, the information also includes payment card numbers and payment card expiration dates.

35. Marriott has recently disclosed that after deduplication, it now appears that approximately 383 million guest records were stolen, including 5.25 million unencrypted passport numbers, 20.3 million encrypted passport numbers, and 8.6 million credit and debit cards, making this the largest data breach in U.S. history.

36. Defendants' storage of unencrypted passport and payment card data was extremely reckless and unsafe.  So was their treatment of encrypted data, because Defendants used only AES-128 encryption, which required only two elements for decryption, both of which appear to have been compromised in the Data Breach. Defendants have acknowledged that encrypted and unencrypted Personal Information may have been stolen in the Data Breach.

37. The Data Breach affected customers all over the world.  Marriott set up dedicated call centers to deal with the Data Breach in at least 55 countries, including Argentina, Australia, Austria, Belgium, Brazil, Bulgaria, Canada, Chile, China, Colombia, Croatia, Cyprus, Czech Republic, Denmark, Estonia, Finland, France, Germany, Greece, Hong Kong SAR, China, Hungary, India, Indonesia, Ireland, Israel, Italy, Japan, Latvia, Lithuania, Luxembourg, Malaysia, Malta, Mexico, the Netherlands, New Zealand, Peru, Philippines, Poland, Portugal, Romania, Russia, Saudi Arabia, Singapore, Slovakia, Slovenia, South Africa, South Korea, Spain, Sweden, Switzerland, Taiwan, United Arab Emirates, the United Kingdom, the United States, and Vietnam.

IVEY, BARNUM & O'MARA, LLC  •  ATTORNEYS AT LAW  •  JURIS NO. 28682
170 MASON STREET  •  GREENWICH, CONNECTICUT 06830-6692  •  (203) 661-6000

38. Asked in December 2018 how Marriott was handling guest and potential guest information since it merged Starwood's data into the Marriott reservations system, as reported in the New York Times a company spokesperson stated: "We are looking into our ability to move to universal encryption of passport numbers and will be working with our systems vendors to better understand their capabilities, as well as reviewing applicable national and local regulations."

39. Quoted in the New York Times, Gus Hosein, executive director of Privacy International, stated: "It's astonishing how long it took them to discover they were breached.  For four years, data was being pilfered out of the company and they didn't notice.  They can say all they want that they take security seriously, but they don't if you can be hacked over a four-year period without noticing."

40. Marriott had reason to be especially vigilant regarding cyber-security.  In 2015, right after Marriott announced that it was acquiring Starwood, Starwood reported a data breach affecting hotel guests at many properties that occurred between November 2014 and October 2015.  Considering that breach, Marriott knowingly accepted considerable risk by acquiring Starwood, and it should have been on alert for other infirmities in Starwood's cyber-security.

## D.   Defendants Failed to Comply with FTC Requirements

41. Federal and state governments have established security standards and issued recommendations to deter and prevent data breaches and the resulting harm to consumers.  The Federal Trade Commission ("FTC") has issued numerous guides highlighting the importance of reasonable data security practices.  According to the FTC, data security should be factored into all business decision-making.

42. In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which established guidelines for fundamental data security principles and practices. The guidelines state that businesses should protect the personal customer information that they keep, properly dispose of personal information that is no longer needed, encrypt information stored on computer networks, understand their network's vulnerabilities, and implement policies to correct security problems. The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs, monitor all incoming traffic for activity indicating someone is attempting to hack the system, watch for large amounts of data being transmitted from the system, and have a response plan ready in the event of a breach.

43. The FTC recommends that companies not maintain cardholder information for longer than is needed for authorization of a transaction, limit access to sensitive data, require complex passwords to be used on networks, use industry-tested methods for security, monitor for suspicious activity on the network, and verify that third-party service providers have implemented reasonable security measures.

44. At all relevant times, Defendants were fully aware of their obligation to protect the personal and financial data of Starwood's and Marriott's guests, users, and customers. Defendants also were aware of the significant repercussions of failing to protect Personal Information. Starwood and Marriott collected payment card data from hundreds of millions of guests and consumers and knew that disseminating or divulging this data would result in injury to consumers.

45. Despite understanding the consequences of inadequate data security, Defendants failed to take appropriate protective measures to secure the Personal Information of guests and other customers, including Plaintiff and other victims.

46. Defendants' failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data constitutes an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45 ("FTC Act").

### E.   Defendants' Inadequate Post-Data Breach Response

47. Because of the delay in notifying consumers of their potential exposure, Plaintiff and other class members face a heightened risk of fraud than they otherwise would have had Defendants timely disclosed the Data Breach.

48. Defendants delayed notifying Plaintiff and class members of the Data Breach for at least three months, from September to November 2019.  The delay may have been much longer, as Marriott's due diligence in acquiring Starwood should have led to discovery of the Data Breach, and may indeed have, long before September 2018.

49. Marriott made no detailed disclosure to its guests and consumers.  As a result, Plaintiff and class members were left exposed to continued misuse, and an ongoing risk of misuse, of their Personal Information, and they lacked the information needed to take necessary precautions to prevent harm.

### F.   Plaintiff and Class Members Suffered Damages

50. The Personal Information of Plaintiff and class members is private and sensitive in nature and was left inadequately protected by Defendants.  Starwood

13

and Marriott were not authorized to disclose Plaintiff's and class members' Personal Information.

51. The Data Breach was a direct and proximate result of Defendants' failure to properly safeguard and protect Plaintiff's and class members' Personal Information from unauthorized access, use, and disclosure, as required by various state and federal regulations, industry practices, and the common law.  This includes Defendants' failure to establish and implement appropriate administrative, technical, and physical safeguards to ensure the security and confidentiality of Plaintiff's and class members' Personal Information, and their failure to protect against reasonably foreseeable threats to the security of such information.

52. Starwood and Marriott had the resources to prevent or timely detect a breach.  They made significant expenditures to market their hotels and hospitality services, but neglected to adequately invest in data security, despite the growing number of data intrusions and several years of well-publicized data breaches.

53. Had Defendants remedied the deficiencies in Starwood's and Marriott's information storage and security systems, followed industry guidelines, and adopted security measures recommended as minimum requirements by experts in the field, they would have prevented or timely detected intrusion into their systems and the theft of their customers' confidential Personal Information.

54. As a direct and proximate result of Defendants' wrongful actions and inactions and the resulting Data Breach, Plaintiff and class members have been placed at an imminent, immediate, and continuing increased risk of harm from

14

IVEY, BARNUM & O'MARA, LLC  •  ATTORNEYS AT LAW
170 MASON STREET  •  GREENWICH, CONNECTICUT 06830-6692  •  (203) 661-6000  •  JURIS NO. 28682

identity theft and identity fraud, requiring them to take the time and make the effort to mitigate the actual and potential impact of the Data Breach on their lives including, *inter alia*, by placing "freezes" and "alerts" with credit reporting agencies, contacting their financial institutions, closing or modifying financial accounts, and closely monitoring their credit reports and accounts for unauthorized activity.

55. Defendants' wrongful actions and inactions directly and proximately caused the theft and dissemination into the public domain of Plaintiff's and class members' Personal Information, causing Plaintiff and class members to suffer, and continue to suffer, compensable economic damages and other actual harm stemming from, for example:

    a.  theft of their personal, financial, and identity information;

    b.  the imminent and certainly impending injury flowing from potential fraud and identity theft posed by their credit/debit card and personal information being placed in the hands of criminals and misused via the sale of Plaintiff's and class members' information on the black market;

    c.  the untimely and inadequate notification of the Data Breach;

    d.  the improper disclosure of their Personal Information; and

    e.  loss of privacy.

56. Plaintiff and the class have also suffered:

    a.  ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably incurred to remedy or mitigate the effects of the Data Breach;

b. ascertainable losses in the form of deprivation of the value of their Personal Information, for which there is a well-established national and international market;

c. overpayments to Starwood or Marriott for products and services purchased during the Data Breach in that a portion of the price paid by was for the costs of reasonable and adequate safeguards and security measures that would protect Plaintiff's and class members' Personal Information, which Starwood and Marriott did not implement and, as a result, Plaintiff and class members did not receive what they paid for and were overcharged by Starwood or Marriott; and

d. deprivation of rights they possess under various statutes.

57. Marriott continues to hold Personal Information of consumers, including Plaintiff and class members.

58. Marriott has demonstrated an inability to prevent a data breach or stop it from continuing after being detected.  Thus, Plaintiff and class members have an undeniable interest in ensuring that their Personal Information is secure, remains secure, is properly and promptly destroyed, and is not subject to further theft.

## CLASS ACTION ALLEGATIONS

59. Pursuant to Practice Book §§ 9-7 and 9-8, Plaintiff, individually and on behalf of all others similarly situated, brings this lawsuit on behalf of herself and as a class action on behalf of the following class:

IVEY, BARNUM & O'MARA, LLC  •  ATTORNEYS AT LAW
170 MASON STREET  •  GREENWICH, CONNECTICUT 06830-6692  •  (203) 661-6000  •  JURIS NO. 28682

> All American citizens who live abroad and whose
> Personal Information was accessed, compromised, or
> stolen in the Data Breach

60. Excluded from the class are Defendants and any entities in which any Defendant or Defendants' subsidiaries or affiliates have a controlling interest, and Defendants' officers, agents, and employees. Also excluded from the class are judges and court personnel in this case, and any member of their immediate families.

61. **Numerosity.   Practice Book § 9-7(1).**   The members of the class are so numerous that the joinder of all members is impractical. While the exact number of class members is unknown to Plaintiff at this time, Marriott has acknowledged that Personal Information of hundreds of millions of customers all over the world has been compromised. In 2016, the State Department estimated that approximately nine million Americans live abroad. (https://web.archive.org/web/20160616233331/ https://travel.state.gov/content/dam/travel/CA_By_the_Numbers.pdf). Marriott has access to contact information for the members of the class, which can be used for providing notice to most class members. Indeed, Marriott has already provided notice of the Data Breach to many class members.

62. **Commonality and Predominance.   Practice Book §§ 9-7(2) and 9-8(3).** This action involves common questions of law or fact that predominate over any questions affecting individual class members, including:

    i.    whether Defendants represented to the class that Starwood or

        Marriott would safeguard class members' Personal Information;

IVEY, BARNUM & O'MARA, LLC  •  ATTORNEYS AT LAW
170 MASON STREET  •  GREENWICH, CONNECTICUT 06830-6692  •  (203) 661-6000  •  JURIS NO. 28682

ii.   whether Defendants owed a legal duty to Plaintiff and the class to exercise due care in collecting, storing, and safeguarding their Personal Information;

iii.  whether Defendants breached a legal duty to Plaintiff and the class to exercise due care in collecting, storing, and safeguarding their Personal Information;

iv.   whether class members' Personal Information was accessed, compromised, or stolen in the Data Breach;

v.    whether Defendants knew about, or should have known about, the Data Breach before it was announced to the public in September 2018;

vi.   whether Defendants failed to timely notify the public of the Data Breach;

vii.  whether Plaintiff and the class are entitled to equitable relief, including, but not limited to, injunctive relief and restitution;

viii. whether Plaintiff and the class may obtain injunctive relief against Marriott to require that it safeguard or destroy, rather than retain, the Personal Information of Plaintiff and class members;

ix.   whether Plaintiff and the class members are entitled to actual, statutory, or other forms of damages, and other monetary relief;

x.    whether Defendants failed to comply with internal company policies and applicable laws, regulations, and industry standards relating to data security;

IVEY, BARNUM & O'MARA, LLC • ATTORNEYS AT LAW
170 MASON STREET • GREENWICH, CONNECTICUT 06830-6692 • (203) 661-6000 • JURIS NO. 28682

xi.   whether Defendants knew or should have known that Starwood or

Marriott did not employ reasonable measures to keep Plaintiff's and

class members' Personal Information secure and prevent the loss or

misuse of that information; and

xii.   whether Defendants failed to provide timely notice of the Data Breach.

63. Similar or identical statutory and common law violations, business

practices, and injuries are involved.  Individual questions, if any, pale by

comparison, in both quantity and quality, to the common questions that

predominate.

64. **Typicality.  Practice Book § 9-7(3).**  Plaintiff's claims are typical of the

claims of the other class members because, among other things, Plaintiff and the

other class members were injured through Defendants' misconduct.  Plaintiff is

advancing the same claims and legal theories on behalf of herself and all other class

members, and there are no defenses that are unique to Plaintiff.  Plaintiff's claims

and those of other class members arise from the same operative facts and are based

on the same legal theories.

65. **Adequacy of Representation.  Practice Book § 9-7(4).**  Plaintiff will

fairly and adequately represent and protect the interests of the members of the

class.  Plaintiff's counsel are competent and experienced in litigating complex class

actions.  The class members' interests will be fairly and adequately protected by

Plaintiff and her counsel.

IVEY, BARNUM & O'MARA, LLC  •  ATTORNEYS AT LAW  •  JURIS NO. 28682
170 MASON STREET  •  GREENWICH, CONNECTICUT 06830-6692  •  (203) 661-6000

19

66. **Declaratory and Injunctive Relief.  Practice Book §§ 9-8(1) and 9-8(2).**
The prosecution of separate actions by individual class members would create a risk
of inconsistent or varying adjudications with respect to individual class members
that would establish incompatible standards of conduct for Defendants.  Such
individual actions would create a risk of adjudications that would be dispositive of
the interests of other class members and otherwise impair their interests.
Defendants have acted and/or refused to act on grounds generally applicable to the
class, making final injunctive relief or corresponding declaratory relief appropriate.

67. **Superiority of Class Action.  Practice Book § 9-8(3).**  A class action is
superior to other available methods for the fair and efficient adjudication of this
controversy since joinder of all the members of the class is impracticable.
Furthermore, the adjudication of this controversy through this class action will
avoid the possibility of inconsistent and potentially conflicting adjudication of the
asserted claims.  There will be no difficulty in the management of this action as a
class action.  Damages for any individual class member are likely insufficient to
justify the cost of individual litigation, so that in the absence of class treatment,
Defendants' violations of law inflicting substantial damages in the aggregate would
go unremedied.

IVEY, BARNUM & O'MARA, LLC  •  ATTORNEYS AT LAW
170 MASON STREET  •  GREENWICH, CONNECTICUT 06830-6692  •  (203) 661-6000  •  JURIS NO. 28682

## CLAIMS ALLEGED ON BEHALF OF THE CLASS

### COUNT ONE: NEGLIGENCE,
### AGAINST ALL DEFENDANTS

68. Plaintiff repeats and realleges paragraphs 1-67, as if fully set forth herein.

69. Defendants owed a duty to Plaintiff and class members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting their Personal Information in Starwood's or Marriott's possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons. This duty included, among other things: (a) designing, maintaining, and testing security systems to ensure that Plaintiff's and class members' Personal Information in Starwood's or Marriott's possession was adequately secured and protected; (b) implementing processes that would timely detect a breach of Starwood's or Marriott's security system; (c) timely acting upon warnings and alerts, including those generated by Starwood's or Marriott's own security systems, regarding intrusions to their networks; and (d) maintaining data security measures consistent with industry standards.

70. Defendants breached their duty to Plaintiff and class members to adequately protect and safeguard Personal Information, by knowingly disregarding standard information security principles, despite obvious risks, and by allowing unmonitored and unrestricted access to Plaintiff and class members' Personal Information. Further, Defendants failed to provide adequate oversight of Personal Information with which they were entrusted, resulting the Data Breach.

IVEY, BARNUM & O'MARA, LLC • ATTORNEYS AT LAW
170 MASON STREET • GREENWICH, CONNECTICUT 06830-6692 • (203) 661-6000 • JURIS NO. 28682

71. Defendants should have discovered the Data Breach prior to September 2018.  Defendants knew or should have known about the data breach prior to that time based, for example, on Marriott's due diligence in acquiring Starwood in 2016.

72. The law imposes an affirmative duty on Defendants to timely disclose unauthorized access and theft of Personal Information to Plaintiff and class members, so they can take appropriate measures to mitigate damages, protect against adverse consequences, and thwart future misuse of Personal Information.

73. Defendants breached their duty to notify Plaintiff and class members of the unauthorized access by failing to notify Plaintiff and class members of the Data Breach until November 30, 2018, months after the Data Breach was purportedly discovered, and four years since the Data Breach commenced.  Defendant Marriott has not provided sufficient information to Plaintiff and class members regarding the extent of the unauthorized access and continues to breach its disclosure obligations to Plaintiff and class members.

74. Defendants' failure to implement proper security measures to protect Plaintiff's and class members' Personal Information has caused Plaintiff and class members to suffer injury and damages.

75. But for Defendants' negligent breach of their duties owed to Plaintiff and class members, their Personal Information would not have been compromised.

76. As a direct and proximate result of Defendants' negligence, Plaintiff and class members have been injured as described herein, and are entitled to damages,

including punitive damages, in an amount to be proven at trial. Plaintiffs and class members' injuries include, for example:

a.  theft of their Personal Information;

b.  costs associated with requested credit freezes;

c.  costs associated with the detection and prevention of identity theft and unauthorized use of their financial accounts;

d.  costs associated with purchasing credit monitoring and identity theft protection services;

e.  unauthorized charges and loss of use of and access to their financial account funds and costs associated with inability to obtain money from their financial accounts or being limited in the amount of money they were permitted to obtain from their financial accounts, including missed payments on bills and loans, late charges and fees, and adverse effects on their credit;

f.  lowered credit scores resulting from credit inquiries following fraudulent activities;

g.  costs associated with time spent and the loss of productivity from taking time to address and attempt to ameliorate, mitigate, and deal with the actual and future consequences of the Data Breach— including finding fraudulent charges, cancelling and reissuing cards, enrolling in credit monitoring and identity theft protection services,

freezing and unfreezing accounts, imposing withdrawal and purchase

limits on compromised accounts, and replacing passports;

h.   the imminent and certainly impending injury flowing from potential

fraud and identify theft posed by their Personal Information being

placed in the hands of criminals;

i.   damages to and diminution in value of their Personal Information

entrusted, directly or indirectly, to Defendants;

j.   continued risk of exposure to hackers and thieves of their Personal

Information, which remains in Marriott's possession and is subject to

further breaches so long as Defendants fail to undertake appropriate

and adequate measures to protect Plaintiff's and class members'

Personal Information; and

k.   overpayment for Defendant's services because Plaintiff and class

members did not get the protection of their Personal Information for

which they bargained.

### COUNT TWO: NEGLIGENCE *PER SE*, AGAINST ALL DEFENDANTS

77. Plaintiff repeats and realleges paragraphs 1-76, as if fully set forth herein.

78. Defendants owed a duty to Plaintiff and class members to exercise

reasonable care in obtaining, retaining, securing, safeguarding, deleting, and

protecting their Personal Information in Marriott's or Starwood's possession from

being compromised, lost, stolen, accessed, and misused by unauthorized persons.

This duty included, among other things, (a) designing, maintaining, and testing

IVEY, BARNUM & O'MARA, LLC  •  ATTORNEYS AT LAW
GREENWICH, CONNECTICUT 06830-6692  •  (203) 661-6000  •  JURIS NO. 28682
170 MASON STREET

24

IVEY, BARNUM & O'MARA, LLC • ATTORNEYS AT LAW
170 MASON STREET • GREENWICH, CONNECTICUT 06830-6692 • (203) 661-6000 • JURIS NO. 28682

security systems to ensure that Plaintiff's and class members' Personal Information

in Starwood's or Marriott's possession was adequately secured and protected;

(b) implementing processes that would timely detect a breach of Starwood's or

Marriott's security system; (c) timely acting upon warnings and alerts, including

those generated by Starwood's or Marriott's own security systems, regarding

intrusions to their networks; and (d) maintaining data security measures consistent

with industry standards.

79. The law imposes an affirmative duty on Defendants to timely disclose

unauthorized access and theft of Personal Information to Plaintiff and class

members, so they can take appropriate measures to mitigate damages, protect

against adverse consequences, and thwart future misuse of Personal Information.

80. Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting

commerce," including, as interpreted and enforced by the FTC, the unfair act or

practice by businesses such as Starwood and Marriott of failing to use reasonable

measures to protect Personal Information.  FTC publications and orders, including

those described above, also form part of the basis of Defendants' duty in this regard.

81. Defendants violated Section 5 of the FTC Act by failing to use reasonable

measures to protect Personal Information and by failing to comply with applicable

industry standards.  Defendants' conduct was particularly egregious given the

nature and amount of Personal Information Starwood and Marriott obtained and

stored (approximately 383 million unique guests and consumers), and the

foreseeable consequences of a data breach at hospitality chains as large as Starwood

and Marriott, including, specifically, the immense damages that would result to Plaintiff and class members.

82. Defendants' violation of the FTC Act constitutes negligence *per se*.

83. Plaintiff and class members are within the class of persons that the FTC Act was intended to protect.

84. The harm that occurred as a result of the Data Breach is the type of harm the FTC Act was intended to guard against. The FTC has pursued enforcement actions against businesses, which, because of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and the class.

85. But for Defendants' breach of duties owed to Plaintiff and class members, Plaintiff and class members would not have been injured.

86. The damages suffered by Plaintiff and class members were the reasonably foreseeable result of Defendants' breach of their duties. Defendants knew or should have known that they were failing to meet their duties, and that the breach would cause Plaintiff and class members to experience the foreseeable harms associated with exposure of their Personal Information.

87. As a direct and proximate result of Defendants' negligence *per se*, Plaintiff and the class have suffered, and continue to suffer, injuries and damages arising from identity theft.

88. As a direct and proximate result of Defendants' negligence *per se*, Plaintiff and class members have suffered and will suffer the continued risks of exposure of

IVEY, BARNUM & O'MARA, LLC  •  ATTORNEYS AT LAW  •  JURIS NO. 28682
170 MASON STREET  •  GREENWICH, CONNECTICUT 06830-6692  •  (203) 661-6000

their Personal Information, which remains in Marriott's possession and is subject to

further unauthorized disclosures so long as Marriott fails to undertake appropriate

and adequate measures to protect it.

## COUNT THREE: BREACH OF IMPLIED CONTRACT, AGAINST ALL DEFENDANTS

89. Plaintiff repeats and realleges paragraphs 1-88, as if fully set forth herein.

90. Defendants solicited Plaintiff and class members to become loyalty program

members and/or to make reservations at Starwood or Marriott properties. Plaintiff

and class members accepted Defendants' offers and made such reservations.

91. When Plaintiff and class members became Marriott or SPG loyalty program

members or made reservations with Starwood or Marriott, they were required to—

and did—provide their Personal Information to Defendants. In so doing, Plaintiff

and class members entered into implied contracts with Starwood or Marriott

pursuant to which Defendants agreed to protect such information and to timely and

accurately notify Plaintiff and class members if their data had been breached or

compromised.

92. Each reservation by Plaintiff and class members was made pursuant to

mutually agreed-upon implied contracts with Starwood or Marriott under which

Defendants agreed to safeguard and protect Plaintiff's and class members' Personal

Information and to provide accurate and timely notice if such information was

compromised, lost, or stolen.

93. Plaintiff and class members would not have provided their Personal

Information to Defendants in the absence of such an implied contract.

94. Plaintiff and class members fully performed their obligations under the implied contracts with Starwood or Marriott.

95. Defendants breached the implied contracts they made with Plaintiff and class members by failing to safeguard or protect the class members' Personal Information and by failing to provide accurate and timely notice when their Personal Information was compromised.

96. As a direct and proximate result of Defendants' breaches of the implied contracts alleged above, Plaintiff and the class members sustained actual losses and damages as described herein and paid more than they otherwise would have paid for Marriott's or Starwood's services.

## COUNT FOUR:
### BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING, AGAINST ALL DEFENDANTS

97. Plaintiff repeats and realleges paragraphs 1-96, as if fully set forth herein.

98. Common law implies a covenant of good faith and fair dealing in every contract. Plaintiff and class members contracted with Starwood or Marriott by accepting offers to stay at one or more hotels.

99. Plaintiff and class members performed the duties and obligations required under their agreements with Starwood or Marriott.

100. All conditions precedent required for Starwood's or Marriott's or performance under its contracts with Plaintiff and class members have occurred.

101. Defendants did not provide, unfairly interfered with, or frustrated the right of Plaintiff and class members to receive the full benefits under their agreements with Starwood or Marriott.

IVEY, BARNUM & O'MARA, LLC • ATTORNEYS AT LAW
170 MASON STREET • GREENWICH, CONNECTICUT 06830-6692 • (203) 661-6000 • JURIS NO. 28682

28

102. Plaintiff and class members were damaged by Defendants' breach in that they paid for, but did not receive, the valuable security protections to which they were entitled under the contracts with Starwood or Marriott, which would have made Starwood's or Marriott's services more valuable.

### COUNT FIVE:
### CONNECTICUT UNFAIR TRADE PRACTICES ACT, C.G.S. § 42-110b, AGAINST ALL DEFENDANTS

103. Plaintiff repeats and realleges paragraphs 1-102, as if fully set forth herein.

104. Defendants engaged in the conduct alleged in this Complaint in the context of transactions intended to result in, and which did result in, the sale of room reservations at Defendants' hotels to Plaintiff and class members.

105. Both before and after its acquisition by Marriott, Starwood's principal place of business and corporate headquarters was in Stamford, Connecticut. Starwood thus operated a trade or commerce intimately associated with Connecticut.

106. Defendants' acts and omissions which led to the Data Breach, including but not limited to their inadequate data security measures and failure to properly protect consumers' Personal Information, originated from and was effectuated in Connecticut, as Marriott maintains its Starwood data warehouse, which stored Plaintiff and the class members' Personal Information, in Stamford, Connecticut. For this reason, Plaintiff and class members suffered their injury, the theft of their Personal Information, in Connecticut.

107. Defendants Starwood and Marriott are "persons" as defined by C.G.S § 42-110a(3).

IVEY, BARNUM & O'MARA, LLC • ATTORNEYS AT LAW
170 MASON STREET • GREENWICH, CONNECTICUT 06830-6692 • (203) 661-6000 • JURIS NO. 28682

108. Defendants Starwood and Marriot are engaged in "trade" or "commerce" as those terms are defined by C.G.S. § 42-110a(4).

109. At the time of filing this Complaint, Plaintiff is sending notice to the Attorney General and Commissioner of Consumer Protection pursuant to C.G.S. § 42-110g(c).  Plaintiff will provide a file-stamped copy of the Complaint to the Attorney General and Commissioner of Consumer Protection.

110. Defendants engaged in unfair and deceptive acts and practices in the conduct of trade or commerce, in violation of C.G.S. § 42-110b, including:

    a.   representing that services have sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities that they do not have;

    b.   representing that services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; and

    c.   engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

111. Defendants made misrepresentations and omissions relating to Personal Information, data security, and the Data Breach that were material because they were likely to deceive reasonable consumers.

112. Defendants made misrepresentations and omissions relating to Personal Information, data security, and the Data Breach that were intended to mislead Plaintiff and class members and induce them to rely on their misrepresentations and omissions.

30

170 MASON STREET  •  IVEY BARNUM & O'MARA, LLC  •  ATTORNEYS AT LAW  •  JURIS NO. 28682
GREENWICH, CONNECTICUT 06830-6692  •  (203) 661-6000

113. Had Defendants disclosed to Plaintiff and class members that Starwood's or Marriott's data systems were not secure and, thus, were vulnerable to attack, Defendants would have been required to implement and adopt reasonable data security measures to comply with their legal obligations, and would have been forced to disclose the material information regarding security. Instead, Defendants maintained customer Personal Information in Starwood's or Marriott's databases and networks, where it was insecure and subject to attack for four years.

114. Customers, including Plaintiff and class members, would not have provided Starwood or Marriott with their Personal Information had they known that Starwood or Marriott was misrepresenting the security of, and omitting the flaws in, its databases. Starwood or Marriott could not have continued to book hotel reservations had it disclosed the truth about its lax security. Additionally, Starwood's and Marriott's rooms would have been worth less to Plaintiff and class members if the truth had been known in the marketplace that Starwood and Marriott employed inadequate security measures.

115. Defendants' unlawful, deceptive, and unconscionable acts include:

   a. failing to implement and maintain reasonable security and privacy measures to protect Plaintiff's and class members' Personal Information, which was a direct and proximate cause of the Data Breach;

   b. failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, and adequately improve security

31

and privacy measures following previous cybersecurity incidents,
which was a direct and proximate cause of the Data Breach;

c.  failing to comply with common law and statutory duties pertaining to
the security and privacy of Plaintiff's and class members' Personal
Information;

d.  misrepresenting that they would protect the confidentiality of
Plaintiff's and class members' Personal Information, including by
implementing and maintaining reasonable security measures;

e.  misrepresenting that they would comply with common law and
statutory duties pertaining to the security and privacy of Plaintiff's
and class members' Personal Information;

f.  omitting, suppressing, and concealing the material fact that they did
not reasonably or adequately secure Plaintiff's and class members'
Personal Information; and

g.  omitting, suppressing, and concealing the material fact that they did
not comply with common law and statutory duties pertaining to the
security and privacy of Plaintiff's and class members' Personal
Information.

h.  continuing to accept credit and debit card payments, and continuing to
store other Personal Information, after they knew or should have
known of the Data Breach and before they purportedly remediated the
Breach.

    i.  failing to timely notify Plaintiff and class members of the Data Breach.

116. These unfair acts and practices violated duties imposed by law, including but not limited to the FTC Act. Specifically, Defendants violated Section 5 of the FTC Act, 15 U.S.C. § 45 through their failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data.

117. Defendants' conduct was intentional, knowing, and/or malicious because they knew or were reckless in not knowing the value of consumers' personal information, and that databases containing such information were targets for hackers, yet they did nothing to secure the database from hacking.

118. Defendants' violations of Connecticut law were done with reckless indifference to the rights of Plaintiff and class members or with an intentional or wanton violation of those rights.

119. Defendants' acts and practices were ongoing failures to secure the Personal Information of Class members, and ongoing failures to comply with common law and statutory duties pertaining to the security of such Personal Information. Such ongoing failures continued at least until the announcement of the Data Breach in November 2018. This action is filed within three years of the alleged violations, pursuant to C.G.S. 42-110g(f).

120. Plaintiff and class members seek all monetary and non-monetary relief allowed by law, including damages, disgorgement, injunctive relief, and attorneys' fees and costs.

121. As a direct and proximate result of Defendants' unfair and deceptive acts and practices, Plaintiff and class members have suffered and will continue to suffer injury which they could not reasonably avoid, including ascertainable losses of money or property, and other damages as alleged above.

**COUNT SIX: C.G.S. § 42-471, PROTECTION OF**
**SOCIAL SECURITY NUMBERS AND PERSONAL INFORMATION,**
**AGAINST ALL DEFENDANTS**

122. Plaintiff repeats and realleges paragraphs 1-121, as if fully set forth herein.

123. The law of this State provides, in relevant part, that "[a]ny person in possession of personal information of another person shall safeguard the data, computer files and documents containing the information from misuse by third parties." C.G.S. 42-471(a).  As defined in this statute, "personal information" means "information capable of being associated with a particular individual through one or more identifiers, including, but not limited to, a Social Security number, a driver's license number, a state identification card number, an account number, a credit or debit card number, a passport number, an alien registration number or a health insurance identification number."  C.G.S. 42-471(c).

124. As alleged in detail above, Defendants did not "safeguard ... from misuse by third parties" uniquely-identifying personal information including but not limited to credit card numbers, debit card numbers, passport numbers, and other government-issued identification data.  Defendants failed to institute reasonable safeguards to prevent the Data Breach and failed to disclose the Data Breach despite knowing of its existence for at least the period between September 8 and November 30, 2018.  Failure to disclose constitutes a distinct failure to "safeguard

IVEY BARNUM & O'MARA, LLC   •   ATTORNEYS AT LAW
170 MASON STREET   •   GREENWICH, CONNECTICUT 06830-6692   •   (203) 661-6000   •   JURIS NO. 28682

the data ... from misuse by third parties" inasmuch as it prevented Plaintiff and class members from taking timely remedial measures to tamp down "misuse."

125. As a direct and proximate result of Defendants' violations of C.G.S. § 42-471, Plaintiff and class members have suffered and will continue to suffer injury which they could not reasonably avoid, including ascertainable losses of money or property, and other damages as alleged above.

126. In addition, Plaintiff and the class assert claims for civil penalties to the maximum extent provided for under C.G.S. § 42-471(e) and C.G.S. § 42-472.

## PRAYER FOR RELIEF

Plaintiff, both individually and on behalf of class members, respectfully requests that the Court enter judgment in their favor and against Defendants, as follows:

1. Certify this action as a class action, proper and maintainable pursuant to Practice Book §§ 9-7 and 9-8;

2. Declare that Plaintiff is a proper class representative;

3. Appoint the undersigned as class counsel;

4. Grant permanent injunctive relief prohibiting Defendants from continuing to engage in the unlawful acts, omissions, and practices described herein;

5. Require Defendants to provide appropriate credit monitoring services to Plaintiff and the class;

6. Award Plaintiff and class members compensatory, consequential, and general damages in an amount to be determined at trial;

7. Order disgorgement and restitution of all earnings, profits, compensation, and benefits received by Defendants as a result of their unlawful acts, omissions, and practices;

8. Award statutory damages, treble damages, and punitive or exemplary damages, to the extent permitted by law;

9. Award Plaintiff reasonable attorneys' fees, costs, and expenses pursuant to C.G.S. § 42-110g;

10. Award prejudgment and post-judgment interest at the maximum legal rate; and

11. Grant all such other relief as the Court deems just and proper.

170 MASON STREET   •   GREENWICH, CONNECTICUT 06830-6692   •   (203) 661-6000   •   JURIS NO. 28682

IVEY, BARNUM & O'MARA, LLC   •   ATTORNEYS AT LAW

Dated at Greenwich, Connecticut this 4ᵗʰ day of February, 2019

IVEY, BARNUM & O'MARA LLC

Michael J. Jones
170 Mason Street
Greenwich, CT 06830
Telephone: (203) 661-9462
mjones@ibolaw.com

PIERCE BAINBRIDGE
BECK PRICE & HECHT LLP

Deborah H. Renner (*PHV* pending)
Claiborne R. Hane (*PHV* pending)
William L. Geraci (*PHV* pending)
20 West 23rd Street, Fifth Floor
New York, New York 10010
Telephone: (212) 484-9866
drenner@piercebainbridge.com
chane@piercebainbridge.com
wgeraci@piercebainbridge.com

Thomas D. Warren (*PHV* pending)
600 Wilshire Boulevard, Suite 500
Los Angeles, CA 90017
Telephone: (213) 262-9333
twarren@piercebainbridge.com

Theodore J. Folkman (*PHV* pending)
361 Newbury Street, 5th Floor,
Boston, MA 02115
tfolkman@piercebainbridge.com

*Attorneys for Plaintiff Melissa Frank*

RETURN DATE: FEBRUARY 26, 2019

| | |
|---|---|
| MELISSA FRANK, ON BEHALF OF HERSELF AND ALL OTHERS SIMILARLY SITUATED, | SUPERIOR COURT |
| Plaintiff, | JUDICIAL DISTRICT OF STAMFORD/NORWALK |
| v. | AT STAMFORD |
| MARRIOTT INTERNATIONAL, INC., STARWOOD HOTELS & RESORTS WORLDWIDE LLC, ARNE SORENSON, AND DOES 1-50, | |
| Defendants. | FEBRUARY 4, 2019 |

## STATEMENT OF AMOUNT IN DEMAND

The amount, legal interest, and property in demand is more than $15,000, exclusive of interest and costs. The Plaintiff also claims equitable relief.

IVEY, BARNUM & O'MARA LLC

Michael J. Jones
170 Mason Street
Greenwich, CT 06830
Telephone: (203) 661-9462
mjones@ibolaw.com

PIERCE BAINBRIDGE
BECK PRICE & HECHT LLP

Deborah H. Renner (*PHV* pending)
Claiborne R. Hane (*PHV* pending)
William L. Geraci (*PHV* pending)
20 West 23rd Street, Fifth Floor
New York, New York 10010
Telephone: (212) 484-9866
drenner@piercebainbridge.com
chane@piercebainbridge.com
wgeraci@piercebainbridge.com

Thomas D. Warren (*PHV* pending)
600 Wilshire Boulevard, Suite 500
Los Angeles, CA 90017
Telephone: (213) 262-9333
twarren@piercebainbridge.com

Theodore J. Folkman (*PHV* pending)
361 Newbury Street, 5th Floor
Boston, MA 02115
tfolkman@piercebainbridge.com

*Attorneys for Plaintiff Melissa Frank*

IVEY, BARNUM & O'MARA, LLC   •   ATTORNEYS AT LAW   •   JURIS NO. 28682
170 MASON STREET   •   GREENWICH, CONNECTICUT 06830-6692   •   (203) 661-6692   •   (203) 661-6000